## JOSEPH BURROUGHS & another *vs.* NORWICH & WORCESTER RAILROAD COMPANY.

A corporation established to transport goods for hire between certain places, and receiving goods directed to a more distant place, is not responsible, beyond the end of its own route, as a common carrier, but only as a forwarder, unless it makes a positive agreement extending its liability.

The officers of a railroad corporation whose route connected with the route of a steamboat corporation supplied blanks to their station agents to receipt for goods to be transported from their stations to points on the connecting route, in a form which provided that the goods should be transported by the railroad corporation to the end of its own route, and thence by the steamboat corporation, and that in case of loss or damage of the goods the corporation alone should be responsible in whose actual custody they might be at the time. Instead of using these blanks, one of the station agents, without the knowledge of the officers of the railroad corporation, and without special authority, was accustomed to give to a person who shipped goods from time to time from that station to points on the connecting route receipts on blanks furnished by that person in a form by the terms of which the railroad corporation was made to promise to forward and deliver the goods to the order of his consignee at those points. *Held,* that the railroad corporation was not bound as a common carrier of the goods beyond the end of its own route, by virtue of receipts so taken.

By a contract between a railroad corporation and a steamboat corporation, whose routes formed a continuous line, it was provided that each should furnish, on its own route only, connecting trains and boats respectively, for the transportation of passengers and merchandise over the line at agreed rates of fare or freight, the proceeds to be divided between the contracting parties in an agreed proportion; and that "loss or damage occasioned by injuries to person or property on said line shall be borne by the party having possession of the same at the time the injuries were done." *Held,* that a person who delivered goods to one corporation, for transportation over the line to a point on the route of the other corporation, could not, by virtue of this contract, hold the first corporation liable for loss of the goods while on the route and in the possession of the second.

A person who delivers to a railroad corporation goods for transportation over a line formed by the railroad with the connecting route of a steamboat corporation cannot hold the railroad corporation responsible for loss of the goods by collision or fire while on the route and in the possession of the steamboat corporation, by virtue of a tariff of rates of freight for the transportation of goods over that line, which does not specify what proportion of any rate represents the service to be performed by either corporation, and which provides for the responsibility of "the line" to the shippers of goods over it, but which sets forth that "this line will not be responsible for collisions, dangers and accidents from steam, fire, sea, rivers;" even if this tariff should be considered as a contract between the shipper and the railroad corporation, varying what would otherwise be the legal liability of the latter for the safety of the goods beyond the end of its own route.

GRAY, J. The railroad of the defendant corporation extends from Worcester in this Commonwealth to New London in the state of Connecticut. The Norwich and New York Transpor

tation Company is a corporation established in Connecticut, owning and running steamboats between New London and the city of New York. The two corporations carried on the business of transporting goods for hire by means of said railroad and steamboats under a written contract between them; and advertised the route thus formed as the Norwich Line, to distinguish it from other lines to and from New York; and freight tariffs, signed by the agents of both companies, were posted in the defendants' stations. The plaintiffs delivered to the defendants at their station at North Oxford in this Commonwealth six bales of goods, marked and addressed to Turnbull, Slade & Company, New York, to be carried for hire over said line to New York. These goods were carried in due course of business over the defendants' railroad to New London, and there by the agent of the Norwich and New York Transportation Company placed on board one of its steamboats, which started, with the goods on board, bound for New York, but on its passage through Long Island Sound came into collision with a sailing vessel, and was thereby disabled, set on fire, burned to the water's edge and sunk, and the plaintiffs' goods destroyed. The plaintiffs seek to charge the defendants for this loss as common carriers.

The law is well settled in this Commonwealth, and in most of the United States, that a corporation established for the transportation of goods for hire between certain points, and receiving goods directed to a more distant place, is not responsible, beyond the end of its own line, as a common carrier, but only as a forwarder, unless it makes a positive agreement extending its liability. *Nutting* v. *Connecticut River Railroad Co.* 1 Gray, 502. *Judson* v. *Western Railroad Co.* 4 Allen, 520. *Darling* v. *Boston & Worcester Railroad Co.* 11 Allen, 295, and cases cited. *Perkins* v. *Portland, Saco & Portsmouth Railroad Co.* 47 Maine, 573. *Brintnall* v. *Saratoga & Whitehall Railroad Co.* 32 Verm. 665. *McMillan* v. *Michigan Southern & Northern Indiana Railroad Co.* 16 Mich. 119, 120. The plaintiffs seek to charge the defendants as common carriers beyond the line of their railroad upon three grounds.

1. The plaintiffs in the first place rely upon the terms of the receipt, signed and delivered to them by the defendants' station agent at North Oxford at the time of receiving the goods, by the terms of which the Norwich and Worcester Railroad Company " *promises to forward and deliver* " the goods to the order of Turnbull, Slade & Company, New York. It is agreed that this station agent had been accustomed to give to the plaintiffs precisely similar receipts for goods delivered by them to the defendants at this station to be transported. But it is also agreed that the blank forms of these receipts were furnished by the plaintiffs themselves; that the officers of the corporation did not know that such receipts were given by the station agent; and that the receipts supplied by those officers to the station agents, and which such agents were accustomed to fill up, sign and deliver, when requested, for goods to be transported to New York, were of a different form, and provided that the goods should be transported by the defendants to New London, and thence by the steamboats of the Norwich and New York Transportation Company to New York, and that, in case loss or damage should be incurred, that company alone should be responsible therefor in whose actual custody the goods might be at the time of such loss or damage. It is agreed that the station agent at North Oxford was the proper person to receive and sign receipts for goods delivered at his station, but that he had no other authority to sign and deliver to the plaintiffs the receipt relied upon, than may be implied from the facts above stated. And we are of opinion that these facts are clearly insufficient to warrant a court or jury in inferring that he had authority to bind the defendants as common carriers beyond the line of their own railroad.

The English cases in which a station agent has been allowed to bind the corporation by a contract to carry beyond its own line are of no weight in this case; because the law of England does not make the distinction which our law does between goods which are and goods which are not addressed to a place beyond the corporation's own line, but holds that in either case the corporation is liable as a common carrier to the ultimate

destination.  *Wilson* v. *York, Newcastle & Berwick Railway Co.*
18 Eng. Law & Eq. 557.  *Scothorn* v. *South Staffordshire Railway Co.* 8 Exch. 341.  *Bristol & Exeter Railway* v. *Collins,*
7 H. L. Cas. 194.

2.  The plaintiffs next rely upon the written contract between
the two corporations in regard to the transportation of goods
between the defendants' stations and New York.*  But this

---

* This contract, dated May 1, 1861, was provided to be in force for ten years
from that date; and in substance was as follows: The railroad corporation
agreed to run daily certain passenger and freight trains between Worcester
and Norwich and New London, connecting at the latter points with steamboats
which the steamboat corporation agreed to run between those points and New
York; and to furnish wharves and an office for the steamboat corporation at
Norwich; and "the said railroad company shall carry the passengers and mer-
chandise delivered to them for that purpose by said boats, and the said steam-
boat company shall carry the passengers and merchandise delivered to them
for that purpose by said trains; the expenses of agents and advertising for the
line in New York shall be paid by the said steamboat company, and the like
expenses on the railroad and its connections shall be paid by the said railroad
company; and both parties agree to use all proper exertion in their power to
procure business for the line and give the same the best possible despatch; and
they are to so conduct the business in every particular as to promote the best
interests of the line."  "Loss or damage occasioned by injuries to person or
property on said line shall be borne by the party having possession of the same
at the time the injuries were done.  But should any property be lost or dam-
aged *in transitu,* and it cannot be ascertained which party had it in charge at
the time of the loss or damage, it shall be paid for by both parties in propor-
tion to the amount by them respectively received for the transportation of the
same."  It was further stipulated that "the gross receipts for transportation on
said line" should be divided in an agreed proportion between the two corpora-
tions; and the remaining provisions of the contract were as follows: "The
said railroad company further agree that in case any opposition boat or boats
shall be placed on said line between New York and New London or Norwich,
they will not make any connection or arrangement with such boat or boats, or
the parties running the same, but will charge the full local rates on their road,
and in such case will pay to said transportation company the excess of the
amount received for transportation over what they would have been entitled to
under the joint rates of the two companies.  A tariff of rates to and from all
points on the line shall, from time to time, be mutually agreed upon and fixed
by the parties, as the business may require.  When the business on the line
of the railroad can be made to pay local rates, it may be done.  Settlements
shall be made between the contracting parties daily."

contract expressly provides that "loss or damage occasioned by injuries to person or property on said line shall be borne by the party having possession of the same at the time the injuries were done." As, at the time of the destruction of the plaintiffs' goods, they were in the exclusive possession of the steamboat company, this contract gives the plaintiffs no right of action against the railroad corporation. *Gass* v. *New York, Providence & Boston Railroad Co.* 99 Mass. 220. *Converse* v. *Norwich & New York Transportation Co.* 33 Conn. 166.

3. The only other evidence on which the plaintiffs rely is, the "freight tariff between New York and stations on Norwich and Worcester Railroad by steamers of the Norwich and New York Transportation Company, and the Norwich and Worcester Railroad," copies of which were posted in the defendants' stations. But if the plaintiffs treat this notice as a contract between themselves and the defendants, varying what would otherwise be the legal liability of the latter, they are bound by its provisions. *Squire* v. *New York Central Railroad Co.* 98 Mass. 239, and cases cited. And it is expressly provided therein that "this line will not be responsible for collisions, damages and accidents from steam, fire, sea, rivers." If such was the contract between the parties, the carriers were exempted from liability for loss of the plaintiffs' goods by collision or by fire.*

In every aspect of the case therefore the plaintiffs fail to maintain their action, and there must be

*Judgment for the defendants.*

*T. L. Nelson & W. W. Rice,* for the plaintiffs.

*F. H. Dewey & F. P. Goulding,* for the defendants.

---

* This freight tariff, under the caption quoted in the opinion, set forth rates of freight without specifying what proportion of any rate represented the service to be performed by either corporation separately, and included the provision, afterwards quoted, among various provisions concerning the "accountability" or "responsibility" of "the line" to shippers of goods.