## HILL MANUFACTURING COMPANY *vs.* BOSTON & LOWELL RAILROAD CORPORATION.

The successive roads of three railroad corporations, together with the line of a steamboat company whose boats plied from the end of the third road, constituted a route between two cities. The first corporation had a written contract with the second for mutual transportation of goods over and beyond their roads, having in view transportation between the two cities, and providing that the first corporation might " bill freight through," and for any loss of goods beyond its own road the second corporation would indemnify it; and the general course in transporting goods from the first city to the second was for the first corporation to receive and receipt for them, as " to be forwarded " to the second city; to dispatch them over its own road and the second road, with a way bill in which they were marked for through transportation which way-bill the third road took, with the goods, from the second road, and in its turn delivered, with the goods, to the steamboat company; and to collect the entire freight, not only for the transportation over its own road and the second road, in pursuance of the written contract, but also over the road of the third corporation and the line of the steamboat company. After deducting from the freight thus collected a portion fixed in its written contract with the second road as due for its own transportation of the goods, it paid the balance to that road, which, after deducting a portion fixed by oral agreement between itself and the third road, paid the residue to the third road, which divided it with the steamboat line in pursuance of an oral agreement between itself and that line. But between the first corporation and the third corporation and steamboat line, and between the second corporation and the steamboat line, there was no agreement except what may be inferred from this course of business. *Held*, that these facts warranted the inference that the first corporation was liable as a common carrier over the whole route, to a person from whom, in this course of business, it received goods for transportation from the first city to the second city.

A common carrier, who ships goods over part of his route on a vessel which he does not own or charter, is not relieved from liability by the U. S. St. of 1851, *c.* 43, if the goods are destroyed by an accidental fire on the vessel.

CONTRACT, to charge the defendants as common carriers with the loss of thirty cases of bleached cottons, delivered to them by the Lowell Bleachery, in behalf of the plaintiffs, for transportation from Lowell to New York City, consigned to the plaintiffs' factor in the latter place. The case was submitted to the determination of the court on a statement of agreed facts, of which the following are the material parts :

The defendants leased and worked the Stony Brook Railroad, which extended from Lowell to Groton Junction and there connected with the Worcester & Nashua Railroad, which extended from Groton Junction to Worcester and at Worcester connected with the Providence & Worcester Railroad, which

extended from Worcester to Providence in Rhode Island, where its tracks ran upon the wharf of the Providence & New York Steamship Company, whose steamers plied from Providence to New York. The defendants, and the Worcester & Nashua Railroad Corporation, the Providence & Worcester Railroad Company, and the Providence & New York Steamship Company, were independent corporations, and had had no connection in business except as hereinafter stated.

From and after the 1st of January 1868, a contract existed between the defendants and the Worcester & Nashua Railroad Corporation, which on May 20, 1868, was reduced to writing and signed by their proper officers. The material parts of this writing are printed in the margin.*

* " This memorandum of agreement, made May 20, 1868, by and between the Boston & Lowell Railroad Corporation, party of the first part, and the Worcester & Nashua Railroad Corporation, party of the second part, witnesseth :

" Whereas the said parties have a mutual and common interest in the business of transporting through passengers and merchandise between Lowell and Worcester and points beyond in either direction, over and upon certain railroads operated and managed by them respectively, viz. : the Stony Brook Railroad, operated by said first party, and the Worcester & Nashua Railroad, operated by said second party,

" Now therefore, for the better and more convenient conducting of said joint business, and to promote harmony between the parties, it is hereby mutually agreed that the said joint business, as hereinafter particularly defined, shall be conducted and adjusted between the parties in the manner and upon the terms and conditions set forth in the following articles of specification, viz :

" *Art.* 1. Each party shall keep and maintain its respective portion of the said line of railroads in good and safe working condition, and shall run thereon for the accommodation of said business such passenger and freight trains and at such times as may from time to time be agreed upon.

" *Art.* 2. Each party shall sell tickets to passengers and bill freight from its principal stations in the line aforesaid, to the principal stations of the parties in the said line, and the party of the first part shall also bill freight and ticket passengers to such other points beyond Worcester as the party of the second part may from time to time direct, and each shall furnish therefor its own tickets, way bills and other incidental stationery.

" *Art.* 3. The party of the first part shall furnish passenger and baggage cars and motive power and men for its own part of the line only. But for the

In May 1868 the plaintiffs delivered the goods to the Lowell Bleachery in Lowell, to be bleached and then sent by the

joint freight it shall furnish its proportion of cars, in either direction, according to the miles which such freight is transported by rail under the joint way bills authorized by this agreement. To facilitate the computations for car service, in the settlements of the same, as hereinafter provided, it is agreed that the portions of railroads composing this line shall be rated at the following lengths, viz: Lowell to Groton Junction, 17 miles; Groton Junction to Worcester, 28 miles; Worcester to Providence, 44 miles.

" *Art.* 4. The party of the second part shall furnish passenger and baggage cars and motive power and men for its part of the said line; also its proportion of freight cars, according to miles run, as aforesaid; and further shall guarantee, and does hereby guarantee to said first party, the furnishing for joint use of a proper proportion of freight cars, or suitable water conveyances and proper transportation of passengers and freight ticketed or billed by the first party over and upon said line and beyond to New York, Providence, and intermediate places, or other points to which the said second party may authorize the sale of tickets or billing of freight by the said first party.

" *Art.* 5. The freight cars for joint business, as aforesaid, shall be kept in repair and running order by, and be at all times at the risk of, the party owning the same, excepting that cars broken by careless usage or defect of track, upon any part of the line herein established, are to be repaired by the party on whose road they are so broken.

" *Art.* 6. The party of the first part shall assume all risks upon joint or through passengers and freight while upon its own portion of the line, and not elsewhere. The party of the second part shall assume all risks upon joint or through passengers or freight, while upon its own portion of the line, and further shall save harmless the said first party from all claims, costs or damages arising out of injuries to passengers or losses or damages in fact on freight or passengers billed or ticketed by said first party to New York or elsewhere over said second party's road, by their consent, or on freight and passengers billed or ticketed from New York or elsewhere, over said second party's road, to stations on the road of the first party, excepting always and only the risk as first named, of the first party on its own part of the line. In case of damage or loss to joint freight or baggage in transportation, when it cannot be ascertained where such damage or loss occurred, the same shall be shared in proportion of miles transported by the whole line from New York or elsewhere, over which said freight or baggage was transported under this joint contract, the said second party assuming, as between the parties hereto, all except the share of the party of the first part."

" *Art.* 7. As it may be impracticable for each party at all times to furnish the exact proportion of freight cars required for the joint business herein referred to, it is agreed that a car account shall be kept and adjusted once a month.

Bleachery to the plaintiffs' factor in New York City, whose name was Josiah Colby. On May 22 the Bleachery delivered the goods, addressed to Colby in New York City, to the defendants' agent at the freight depot of the defendants in Lowell, and took from him a receipt, which he signed, as follows: " Received of the Lowell Bleachery, to be forwarded to New York, thirty packages of goods marked, 22, Josiah Colby, H. C. A.; 7, Josiah Colby, H. C. D.; 1, Josiah Colby, H. C. B." The Bleachery at the same time delivered to the defendants a forwarding order, at the bottom of which was printed in red ink, " Charge freight to Lowell Bleachery," it being the invariable usage of the Bleachery to give orders in this form whenever it was to pay the freight on goods sent by it, and the defendants being used, at the end of each month, to present to and collect from the Bleachery a bill of charges on such freight. " The defendants charged the whole freight on the thirty cases of goods, from Lowell to New York, at the rate of thirty cents per hundred, and at the end of the month presented their bill to the Bleachery Company, which was paid by them June 9, 1868. In

And either party furnishing more than its proper proportion shall receive from the other as full compensation therefor one third of a cent per mile for each ton transported in such excess cars over such other party's part of the line."

" *Art.* 8. The party of the second part shall have exclusive control of the through joint tariffs of rates for passengers and freight under this contract, and may make and modify the rates at their own discretion."

" *Art.* 9. Each party shall collect and be responsible in general account for the charges on joint freight made payable at its own stations, or for joint tickets sold thereat, and on the part of the second party at and for stations beyond Worcester, as aforesaid.

" *Art.* 10. Settlements shall be made and all balances between the parties hereto shall be adjusted and paid over once in every month, and the party of the first part shall be entitled to and receive as its full share from the receipts of such joint business at the following rates, viz : " [Here were specified rates for freight and passengers between Lowell and Groton Junction.]

" *Art.* 11. This contract shall date back and take effect on business of the first day of January 1868, and continue in force one year therefrom, and thereafter until terminated by notice in writing from either party to the other, delivered not less than three months before the time specified by such notice for termination."

thus sending goods to the plaintiffs' agent in New York, the Bleachery Company were acting for the plaintiffs."

" The goods were forthwith transported from Lowell by the defendants' agents over the Stony Brook Railroad to Groton Junction, and there delivered, with the cars in which they were transported, to agents of the Worcester & Nashua Railroad Corporation, and by them carried over their railroad to Worcester, where they were by them in like manner delivered to agents of the Providence & Worcester Railroad Company, and carried over their railroad to Providence, the defendants' cars being used until their arrival at the latter place, where agents of said Providence & Worcester Railroad removed the goods from the cars and delivered them in good order to agents of the Providence & New York Steamship Company, by whom they were placed on board one of said company's boats bound for New York; and this was the only mode in which goods were ever transported from Lowell to New York by this route. The steamer, with these goods on board, arrived at New York on Sunday morning, May 24, about 9 o'clock, the usual hour of arrival, and was laid alongside of the wharf, and no goods were removed from her. The wharf belonged to the steamship company, and at the head of the dock were the company's offices, extending to within a few feet of the steamer as she lay at the wharf. No person was present in the offices, except one watchman. About twelve o'clock, he was informed by some one in the street that the offices were on fire; on examining, the fire had made such headway inside of the offices that it was impossible to stop it; and in a few minutes it was communicated to the steamer, which could not be moved, having no steam on, and the steamer, with the merchandise on board, was partly consumed. It has never been known what was the cause of the fire in the company's office, but it was agreed that it was not caused by design of the owners of the steamer. Colby had received no notice of the arrival of the steamer at the time of the fire; and it was not the custom to unload or deliver the goods arriving on Sunday till the Monday following. The plaintiffs' loss and damage upon the goods by the fire was $4558.24."

Hill Manufacturing Company *v.* Boston & Lowell Railroad Corporation.

" The course of business which had subsisted since January **1, 1868,** with regard to goods shipped by the Bleachery in the manner in which these were shipped, was this : A way-bill containing a list of all goods sent on each day, in the form printed in the margin,* was forwarded with the goods and delivered by the defendants to the Worcester & Nashua Railroad Corporation at Groton Junction, and by them delivered at Worcester to the Providence & Worcester Railroad Company, who delivered it to the Providence & New York Steamship Company at Providence. A duplicate way-bill, a copy of which is printed in the margin,† (and, when freight was paid in Lowell, marked ' paid,') was forwarded with the goods and delivered by the defendants to the agents of the Worcester & Nashua Railroad Corporation at Groton Junction, and by them delivered to the agents of the Providence & Worcester Railroad Company at Worcester, who delivered the same to the Providence & New York Steamship Company at Providence ; and when the freight had been paid in Lowell, the steamship company sent said bill to the consignee, and stamped the name of the steamer bringing the goods and the date upon it, which was delivered to the consignee with the merchandise. This would have been done in the present instance, but for the happening of the fire.

---

\* STONY BROOK RAILROAD.

Way-Bill of Merchandise forwarded from_____18

| No. of Car. | Consignee and Destination. | Description of Articles. | Cubic Feet. | Weight. | Expenses. | Rate. | Freight payable at | Freight payable at |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

† Steamboat, May 22, 1868.

Mr. Josiah Colby to Stony Brook Railroad Company, Dr.

For Transportation of Merchandise from Lowell to New York *viâ* Providence.

| | Weight. | Cubic Feet. | Expenses. | W. & N. Ft. | Worcester to N. Y. | Total. | |
|---|---|---|---|---|---|---|---|
| 30 Cases Doms. | 7620 |  |  |  |  | 22 | 36 |

Prov. & N. Y.
S. S. Co.
May 22,
1868.
Oceanus.

Received Payment.                              *Paid.*

" The Worcester & Nashua Railroad Corporation, before the sending of the goods sued for in this action, had directed the defendants to ticket passengers and bill freight from stations on the defendants' line of railroad, to New York, over the Worcester & Nashua Railroad, by way of Providence, according to the contract between them ; and had fixed the rate of freight from Lowell to New York under said contract; and this was the rate charged by the defendants, and paid by the Bleachery for the goods sued for. The defendants charged and collected the entire freight for said goods, in pursuance of said contract, and received to their own use the price per ton provided in said contract, and paid over to the Worcester & Nashua Railroad Corporation the balance. The said balance was divided between the three remaining corporations over whose routes the goods passed, in the following manner and proportions, viz : the Worcester & Nashua Railroad Corporation received to its own use 34 per cent. of the whole charge from Lowell to New York, less the amount retained by the defendants, and paid over the residue to the Providence & Worcester Railroad Company; and said residue was divided by the Providence & Worcester Railroad Company and the Providence & New York Steamship Company, in the ratio of 44 to 66. This division of the balance, after paying the defendants, was effected in pursuance of oral agreements between the Worcester & Nashua Railroad Corporation and the Providence & Worcester Railroad Company, and between the Providence & Worcester Railroad Company and the Providence & New York Steamship Company; but there was no agreement, oral or otherwise, between the defendants and either the Providence & Worcester Railroad Company or the Providence & New York Steamship Company, nor between the Worcester & Nashua Railroad Corporation and said steamship company."

" The court, upon the foregoing facts, so far as the same are competent, are to render such judgment as the law requires, it being agreed that they may draw any inferences from the competent facts stated that a jury would be justified in drawing."

*J. G. Abbott*, for the plaintiffs, besides cases cited for the defendants and in the opinion, cited *Najac* v. *Boston & Lowell Railroad Co.* 7 Allen, 329; *Fitchburg & Worcester Railroad Co.* v. *Hanna*, 6 Gray, 539; *Simkins* v. *Norwich & New London Steamboat Co.* 11 Cush. 102; *Cobb* v. *Abbot*, 14 Pick. 289; *Weed* v. *Saratoga & Schenectady Railroad Co.* 19 Wend. 534; *Fairchild* v. *Slocum*, Ib. 329; *Champion* v. *Bostwick*, 18 Wend. 175; *Hart* v. *Rensselaer & Saratoga Railroad Co.* 4 Selden, 37; *Quimby* v. *Vanderbilt*, 17 N. Y. 306 *Illinois Central Railroad Co.* v. *Copeland*, 24 Ill. 332; *Mytton* v. *Midland Railway Co.* 4 H. & N. 615; *Bristol & Exeter Railway Co.* v. *Collins*, 7 H. L. Cas. 194.

*F. P. Goulding*, for the defendants. 1. The liability of common carriers can be made to attach to the defendants in one of two modes only; by showing a special and express undertaking to carry the goods from Lowell to New York; or by showing such an arrangement between them and the other carriers constituting the line of transportation as to impose a joint liability on all the parties to it. *Nutting* v. *Connecticut River Railroad Co.* 1 Gray, 502. *Darling* v. *Boston & Worcester Railroad Co.* 11 Allen, 295. *Gass* v. *New York, Providence & Boston Railroad Co.* 99 Mass. 220. *Burroughs* v. *Norwich & Worcester Railroad Co.* 100 Mass. 26.

2. There was no such express and special undertaking of the defendants. The receipt and forwarding order were the only papers that passed between the parties; and they only stated the fact of the delivery to and acceptance by the defendants of these goods to be forwarded to New York. The law imposes from that fact the obligation to transport them safely over the defendants' road, and deliver them to the next carrier in the line; and the papers therefore imposed no liability which the law would not impose without them. *Naugatuck Railroad Co.* v. *Waterbury Button Co.* 24 Conn. 468. *Elmore* v. *Naugatuck Railroad Co.* 23 Conn. 457. *Hood* v. *New York & New Haven Railroad Co.* 22 Conn. 1. *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.* 18 Verm. 131, and 23 Verm. 186. *Van Santvoord* v. *St. John*, 6 Hill, 157 *Nutting* v. *Connecticut*

*River Railroad Co.* 1 Gray, 502. *Lowell Wire Fence Co.* v. *Sargent*, 8 Allen, 189. *Converse* v. *Norwich & New York Transportation Co.* 33 Conn. 166. The duplicate way-bill (so called) which it was the course of business to send with goods sent as these were, and deliver with the goods to the consignee, would not, even if delivered, constitute a contract to assume a further liability. It is a mere receipt for freight, the only purpose of which was to inform the successive carriers and the consignee that the entire freight had been prepaid, and cannot add any liability other than would be implied from the fact of prepayment. The case finds that the defendants "charged and collected the entire freight for said goods, in pursuance of said contract" with the Worcester & Nashua Railroad. It distinctly appears, therefore, what interest they had in the freight collected. The statement in this duplicate way-bill, that Colby is "debtor for transportation of merchandise from Lowell to New York," does not import a contract on the defendants' part to carry through, but at most that the freight had been or was to be collected by the defendants. If it is contended that its terms constitute an express undertaking to carry through, it is sufficient to reply that it was never delivered to the plaintiffs, and further, that the defendants do not appear to be parties to it.

3. Nor was there any arrangement between the defendants and the other carriers, which imposed a joint liability. When there are arrangements between connecting carriers as to through freight, the liability of each is to be determined by a fair construction of the terms. *Darling* v. *Boston & Worcester Railroad Co.* 11 Allen, 295. So far as the plaintiffs rely upon the written contract of the defendants with the Worcester & Nashua Railroad, it would seem to be decisive to answer in substantially the language of the court in *Burroughs* v. *Norwich & Worcester Railroad Co.* 100 Mass. 26, that this contract expressly provides that the defendants should assume all risks upon through freight while upon their portion of the line, and not elsewhere, and that the goods were injured elsewhere, and while in the exclusive custody of the steamship company. As between the parties to it, and as to third persons, it does not constitute a partnership

There is no community of interest in the property by means of which the business is done, or the profits which result from it; no common fund from which expenses are paid and profits divided; no community of control or management. One of the parties to it might be making large profits, the other large losses, in the business which is the subject of the contract. " There was no general agreement between the companies by which they were to share the proceeds of the whole business on all the lines; so that it is not within the principle laid down in *Champion* v. *Bostwick*, 18 Wend. 176." Hoar, J., in *Gass* v. *New York, Providence & Boston Railroad Co.* 99 Mass. 220, 227. It can make no difference that the parties term the business a joint business. What they mean by joint business is through business. The words are used interchangeably in the contract. The arrangement for furnishing proportionate numbers of freight cars was made to meet the inconvenience of transfer at the point of junction, and is a mere exchange of cars for mutual accommodation.

4. Even if it is granted that the defendants and the Worcester & Nashua Railroad Corporation were partners under the written contract, it does not follow that the defendants are liable in this action. The goods were not injured while either of the parties to the contract had custody of them; and no connection whatever is shown to have existed between the defendants or the Worcester & Nashua Railroad Corporation and the steamship company.

The only facts which can be adduced to establish the liabil ity of the defendants are these : that they charged and collected the entire freight; that by the contract with the Worcester & Nashua Railroad Corporation they provided for the means of transportation of goods billed to New York; and that they took a stipulation of indemnity from that corporation against all claims, costs and damages arising out of injuries or losses occurring on freight billed by them to New York or elsewhere, except such as should occur on their own portion of the line.

But they charged and collected the entire freight, in pursuance of the contract, as the agents of the next carrier, except as

to so much as would pay their own earnings, and they paid it over to the next carrier accordingly. There was no claim of title to the whole freight, but only a power and agency as to it. The case does not differ in this respect from *Gass* v. *New York, Providence & Boston Railroad Co.*, or *Burroughs* v. *Norwich & Worcester Railroad Co.*

The provision for the means of transportation of goods billed to New York was reciprocal with that made by the defendants to carry goods coming from the other direction, and was merely an arrangement by which the defendants secured to the public the advantage of an unbroken line of transportation. It is an element which has existed in all the similar cases recently before the court, including both the cases of *Gass* and *Burroughs.*

The further stipulation for an indemnity does not conclude the defendants upon the question of general liability, or of liability in any particular case, and was inserted in the contract out of abundant caution and to meet any possible emergency. By it, as between themselves and the Worcester & Nashua Railroad Corporation, the defendants would exclude all question; but do not assume, directly or indirectly, any responsibility as to third persons.

The whole arrangement subsisting in this case is analogous to that in *Darling* v. *Boston & Worcester Railroad Co.* 11 Allen, 295.

5. Finally, whatever view may be taken of the arrangements between the carriers constituting the line over which these goods were transported, the defendants cannot be held liable in this action. The damage to the goods occurred by a fire on board of a vessel engaged in commerce between the states, which was not caused by the design, and there is no evidence that it was caused by the neglect, of the company which owned the vessel; and that company are exempted from liability for the loss, by the U. S. St. of 1851, *c.* 43; 9 U. S. Sts. at Large, 635.* The

---

* U. S. 1851, *c.* 43, § 1. "No owner or owners of any ship or vessel shall be subject or liable to answer for or make good to any one or more person or persons any loss or damage which may happen to any goods or merchandise whatsoever which shall be shipped, taken in, or put on board any such ship or

navigation from Providence to New York on Long Island Sound was not inland navigation. See *Moore* v. *American Transportation Co.* 24 How. 1, 38. And if the defendants would otherwise be liable, they also are exempted by this statute; for, if they are regarded as so connected with the steamship company in the business of through transportation as to be jointly liable with them for all losses on any part of the route, then they are *pro hac vice* shipowners within the meaning of the statute; and if the arrangement and course of business were such as to imply an undertaking on their part to carry through, the undertaking was so far qualified by the statute as to entitle them to the same immunity which it conferred on the carriers by water whose route and facilities they availed themselves of.

AMES, J. The law applicable to the conveyance of goods by successive carriers over connecting but independent lines of transportation has recently been very fully considered by this court. The case now before us does not appear to call for anything more than the application of the rules laid down in *Darling* v. *Boston & Worcester Railroad Co.* 11 Allen, 295, and *Burroughs* v. *Norwich & Worcester Railroad Co.* 100 Mass. 26. It is well settled that a railway company may by contract assume to carry goods beyond, as well as within, the limits of its own line of road; and the claim of the plaintiffs is, that the de-

---

vessel, by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners; *provided*, that nothing in this act contained shall prevent the parties from making such contract as they please, extending or limiting the liability of shipowners."

§ 5. "The charterer or charterers of any ship or vessel, in case he or they shall man, victual and navigate such vessel at his or their own expense, or by his or their own procurement, shall be deemed the owner or owners of such vessel, within the meaning of this act; and such ship or vessel, when so chartered, shall be liable in the same manner as if navigated by the owner or owners thereof."

§ 7. "This act shall not apply to the owner or owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation."

fendants have made such a contract in this instance, and have rendered themselves liable as common carriers for the entire distance.

The case finds that the defendants, by means of their written contract with the Worcester & Nashua Railroad Corporation, had secured the means of placing themselves in connection with an established line of transportation, partly by railroad and partly by steamboat, between Lowell and New York. They had no contract themselves with the proprietors of any part of the line beyond the city of Worcester ; but the corporation with which they were immediately dealing had such contracts. The manner in which the freight money should be apportioned among the successive carriers was fully arranged and agreed upon. There can be no doubt that the object to be gained by their written contract with that corporation was to form a connection with the city of New York, and in that way to extend their business and increase their profits. Their arrangements had made it substantially certain that all goods forwarded over and beyond their line would ordinarily go and be delivered at their place of destination in the regular course of business. By the sixth article of the written contract with that corporation, the latter undertakes to indemnify the defendants against a.. losses and damages happening in any part of the joint line. beyond the limits of the defendants' own road. The defendants were therefore in a position in which, without any great or extraordinary risk, they might assume the responsibility of common carriers for the entire distance. The precise and well considered precaution which they had taken, to be secured against all the risks of accident or mistake beyond their own limits, is a plain indication that they considered all goods, so transported, at their risk, as between them and the owners of these goods. If they were under no liability beyond their own *termini* except that of forwarding agents, they needed no such promise of indemnity. It is a matter of no consequence that the owners of the goods sent were not parties to this particular arrangement, or that it was not a thing of which they had any knowledge. The question is, What was the contract which the

defendants made with the plaintiffs on receiving the goods? The plaintiffs do not claim that it was reduced to a formal shape, and so expressed in apt words as to define with technical precision the exact rights and liabilities of each party, but they insist that the general character of the defendants' arrangements concerning the transportation of goods, and their general course of business on the subject, were perfectly well known to the Bleachery Company, who for this purpose were the plaintiffs agents; and that this course of business was implied in and made a part of the contract under which the goods were received and forwarded; that is to say, that the contract was made with reference to that course of business, and to the practice which the defendants had adopted under it.

The case is submitted with an agreement that the court may draw any inferences from the competent facts stated that a jury would be justified in drawing; and the only matter in controversy is the question, What was the defendants' contract upon the receipt of the goods? They had placed themselves in a position to do New York business, by having established a through joint line, under a written agreement with the Worcester & Nashua Railroad Company. It was a part of the agreement, that they were authorized by the latter corporation to give way-bills for freight for the entire distance, or, in the language of the contract, "to bill freight through." It was also a part of the agreement, not merely that all goods after they had left the defendants' line should be at the risk of the Worcester & Nashua Railroad, but that this latter corporation should indemnify the defendants and save them harmless against loss or damage happening beyond their limits. The true interpretation of the facts then seems to be, that the defendants were to contract in the first instance with the owner or consignor of the goods, for the entire distance, and were encouraged and induced to do so by the assurance that they should really lose nothing in so doing. Such being their position, they offer to receive goods to be carried to New York; they receive them to be delivered there; they give a way-bill for the entire distance; they take pay for transportation . over the whole of the line; the

whole course of proceedings is exactly what it would be if they meant to contract for the whole distance; and to all appearance, as between them and the owner, the freight money is one indivisible item. We think these circumstances justify the inference that they assumed the liability for the entire transit, relying upon a third party for indemnity against all risks occurring beyond their own limits.

If the defendants incurred the liability of common carriers for the entire journey, as in our judgment upon the agreed facts they did, their liability as such did not cease upon the mere arrival of the steamboat at the wharf in New York. No notice had been given to the owner of the goods of their arrival. No reasonable time (as they arrived on Sunday morning) had been allowed for their removal. They had not been landed from the vessel, but still continued, in law and in fact, in the possession of the last carrier in the line, at the time of the fire. There was neither actual nor constructive delivery of them to the consignee. *Hyde* v. *Trent & Mersey Navigation Co.* 5 T. R. 389. *Chickering* v. *Fowler*, 4 Pick. 371.

The statute of the United States, relied upon by the defendants, does not apply to cases like the present. It undertakes to exempt the owners of vessels from responsibility for losses arising from accidental fires, and it provides that charterers, who man, victual and navigate vessels, shall be deemed the owners within the meaning of the act. But these defendants are neither owners nor charterers of the steamboat, and do not come within the terms of the act. It certainly was not the intention of congress to extend the exemption, provided for by the statute, to expressmen or other common carriers who may avail themselves of the facilities afforded them by steamboats or other vessels for the transportation of packages in the fulfilment of contracts under which they assume the well known common law liability. The result therefore must be

*Judgment for the plaintiffs for the amount agreed, with interest*