ALBERT J. FEITAL & wife *vs.* MIDDLESEX RAILROAD COMPANY.

The facts that the exercises of a spiritualist camp meeting included a show to which an admittance fee was charged, and that some of the speakers declared that they would throw away the Bible in their search after truth, are not conclusive that a person who travelled on the Lord's day to attend the meeting did so unlawfully; and the question whether he travelled except from necessity or charity is for the jury.

A passenger may recover for personal injuries occasioned to him by the negligence of a street railway corporation, who were transporting him on a railway which they had leased unlawfully but were using and maintaining without objection from its owners or the Commonwealth.

On the trial of an action against a street railway corporation for injuring a passenger, proof that the injury was caused by a car's running off the track, at a place where the

track and the car were under the exclusive control of the defendants, is sufficient to charge them with negligence, in the absence of any evidence that the accident happened without their fault.

TORT against a street railway corporation, for injuries result ing to the female plaintiff from an accident which happened while she was travelling in one of the defendants' cars on the afternoon of Sunday, September 6, 1868.

At the trial in this court, before *Wells*, J., the plaintiffs introduced evidence that on the day in question they went from Charlestown to Boston, and there, about two o'clock in the afternoon, took passage on one of the defendants' cars for Malden, and on their arrival at Malden went to a spiritualist camp-meeting, which was held in a field; that Mrs. Feital believed in spiritualism as a religion, and attended the meeting for devotional exercise and for no other purpose, as her form of worship, and as a matter of conscience, her own meeting which she regularly attended in Charlestown being omitted that afternoon; that the exercises consisted of public speaking from the "grand stand," and singing and praying, and during the exercises it was announced from the grand stand that Miss Laura Ellis would give physical manifestations in a tent near by, to which an admittance fee of twenty-five cents would be charged; that the plaintiffs did not attend the manifestations in the tent; but that they were "a part of the spiritualistic form of religion, and a part of their religious services." Evidence was afterwards introduced by the defendants "that these manifestations consisted of Miss Ellis's being put into a cabinet with her hands tied; that music was heard coming from the cabinet; and that, when it was opened, Miss Ellis was found with her hands untied, and a ring that had been on her finger was then on the end of her nose." It also appeared "that some of those who spoke from the grand stand claimed to be in a spiritualistic state, and to represent the spirits of persons dead; that the speaking and praying was by trance mediums among others, with singing of devotional hymns by the congregation; and that some of the speakers said they would throw away the Bible in their search after truth."

It appeared that the plaintiffs remained till the public exercises at the stand were over, and then took passage at Malden on the defendants' car for Charlestown; and that after proceeding about a mile the car ran off the track, and Mrs. Feital was thrown from her seat by the shock. And there was evidence tending to show that she suffered serious physical injuries thereby.

To further prove the negligence of the defendants, the plaintiffs called the conductor and the driver of the car as witnesses; and they testified " that the car ran off the track, one wheel inside and one outside of the track; that they with others lifted the car on again; that there was no defect in the car, the wheels or the track; that the car was going about five miles an hour; that when they lifted the fore-wheels on the track everything was right, and the car went on; that cars went over this place just before and just afterwards, without trouble, and they did not know what made the car run off, except that the driver stated that in his opinion the fore part of the car was so crowded as to make the rails spread; that the car, when it went off, fell eight or ten inches, went along about three feet, and brought up against a sleeper very suddenly, so that the driver was thrown against the dasher, and saved himself from falling by putting his hand on the pole between the horses, and one of the traces was broken; that the track was built on the side of the road and out of the travelled way, and was constructed like a steam railroad track, with a T rail, and sleepers across the road bed; and that the rail was about two and a half inches high."

When the plaintiffs rested their case, the defendants requested a ruling that they could not recover, because they had failed to show negligence, and because they were travelling on Sunday and had failed to show that it was for necessity or charity; but the judge ruled that those questions were for the jury.

The defendants then introduced evidence that the road where the accident occurred was property of the Malden and Melrose Railroad Company, and had been leased by the defendants with an agreement to keep it in repair; and their superintendent testified that he went over the whole road the day before the accident, and there was then no defect in it, and that the day after

the accident he saw the place where it occurred, and there was nothing the matter with the road then, and had not been since. They also introduced evidence tending to show that there was a "saloon tent" on the field where the camp meeting was held, and victuals and drink were sold in it, and that some persons bought whiskey there; but it did not appear that the managers of the meeting knew of the whiskey, and it did appear the meeting was not disorderly. The defendants further put in an advertisement of the meeting, from a newspaper called the Banner of Light, in consequence of reading which advertisement Mrs. Feital was induced to attend the meeting; and it thereby appeared that the physical manifestations of Miss Laura Ellis were expected to form a part of the exercises. At the close of their evidence, the defendants requested the judge to instruct the jury as follows:

"1. The plaintiffs were travelling on board the defendants' car to a spiritualist camp-meeting from Malden to Charlestown. I instruct you that the plaintiff had no right to hire a passage on board of this car for such a purpose. It was not travelling for necessity or charity, and therefore the plaintiff cannot recover.

"2. The plaintiff received her accident on Sunday. She went from Boston to Malden to a spiritualist camp-meeting, and returned and received her injury, as she claims, on board of the defendants' car. The evidence seems to show that she was travelling on a car which had no legal contract to carry any one on that day. This she is taken to know, and I therefore instruct you that under this state of facts she cannot recover.

"3. The plaintiff received her accident from the fact of the car's running off the track while travelling at a moderate rate. There is no evidence that the car was out of order. It is not claimed that the driver did anything wrong, or that the rails were before or then or afterwards out of order. It is only evident that the car ran off the rails, one wheel inside and one wheel outside, and all that had to be done was to lift the fore part of the car and replace the wheels upon the track. Under these circumstances, the plaintiff cannot recover.

"4. The defendants leased the road on which this happened, contrary to the statutes, and hence had no authority to run their

cars over this track, could make no contract to carry passengers, and, being a corporation, cannot be liable.

" 5. That there was no evidence of any negligence on the part of the defendants.

" 6. That the burden of proof is upon the plaintiffs to show how the accident happened and what was the particular negligence that caused the same; and that, unless the plaintiffs had done so, they could not recover."

The jury found for the plaintiffs, with damages in the sum of $5000 ; and the defendants alleged exceptions. The bill of exceptions after stating the six instructions specially requested by the defendants, continued thus : " To which rulings and refusals to rule the defendants, being aggrieved, except ; " and did not state with what instructions the case was submitted to the jury.

*T. H. Sweetser & L. M. Child*, for the defendants. 1. The plaintiffs cannot recover, unless Mrs. Feital was travelling from necessity or charity. Gen. Sts. *c.* 84, § 2. *Stanton* v. *Metropolitan Railroad Co.* 14 Allen, 485. Under the statute, no one has a right to travel on the Lord's day to attend even religious services away from his home and accustomed place of worship. But the meeting which the plaintiffs attended was held for idolatry and jugglery. It avowed its hostility to Christianity, by throwing away the Bible ; and its substance was a juggler's show, with some free performances outside, to attract the crowd to the main exhibition, to which an admittance fee was charged. Mrs. Feital , may have a right to be an idolater and to attend shows, but not in violation of the statute, which was intended to protect the conscience of the majority of the people from being offended by the public practice on the Lord's day not only of idolatry, but even of " all acts of a secular nature, belonging to or connected with ordinary business or common worldly affairs." Bigelow, C. J., in *Bennett* v. *Brooks*, 9 Allen, 118, 119. Her attendance at that meeting was an act " not morally fit and proper to be done on the Sabbath." See *Commonwealth* v. *Sampson*, 97 Mass. 407. The test is not her conscience, but the true intent of the statute. The assemblage was precisely one adapted " to the disturbance of serious people, either at public worship or in their own houses.'

*Commonwealth* v. *Knox*, 6 Mass. 76, 78. See also *Pearce* v. *Atwood*, 13 Mass. 324; *Flagg* v. *Millbury*, 4 Cush. 243.

2. The defendants' lease of the Malden and Melrose Railroad was without legislative sanction, and void. They therefore had no valid contract of transportation with Mrs. Feital; and as the relation of passenger and carrier did not exist, she cannot maintain an action for a breach of its duties. *Hood* v. *New York & New Haven Railroad Co.* 22 Conn. 502. *Naugatuck Railroad Co.* v. *Waterbury Button Co.* 24 Conn. 468. *Pearce* v. *Madison & Indianapolis Railroad Co.* 21 How. 441. *East Anglian Rail way Co.* v. *Eastern Counties Railway C*o. 11 C. B. 775. *McGregor* v. *Dover & Deal Railway Co.* 18 Q. B. 618. *Great Northern Railway Co.* v. *Eastern Counties Railway Co.* 9 Hare, 306. *Safford* v. *Wyckoff*, 1 Hill, 11. *Leavitt* v. *Palmer*, 3 Comst. 19. *Talmage* v. *Pell*, 3 Selden, 328.

3. The plaintiff did not sustain the burden of showing how the accident happened, and that it happened by some fault of the defendants. The defendants were bound to exercise a high degree of care to provide suitable tracks and cars and horses, and then to exercise a like care in driving the cars; but the evidence shows no negligence in any of these respects. *Pemberton Co.* v. *New York Central Railroad Co.* 104 Mass. 144. The fact of an accident does not raise a presumption of negligence in a carrier, un less it appears from the nature of the accident that it was due to some want of care on his part. *Curtis* v. *Rochester & Syracuse Railroad Co.* 18 N. Y. 534. *Bowen* v. *New York Central Railroad Co.* Ib. 408. *Hammack* v. *White*, 11 C. B. (N. S.) 587, 594. Passengers are not entitled to every precaution to insure their safety, which may be suggested in the light of an accident. *Crafter* v. *Metropolitan Railway Co.* Law Rep. 1 C. P. 300. But in this case the plaintiffs fail to suggest any possible addi tional precaution. The cause of this accident was not only un discoverable beforehand, but has always remained so. *Ingalls* v. *Bills*, 9 Met. 1. The only attempt of the plaintiffs to explain it consists in evidence of the opinion of the driver of the car, which affords no foundation for a verdict, and which the facts contradict. See also *Christie* v. *Griggs*, 2 Camp. 79; *Crofts* v. *Waterhouse,*

3 Bing. 319, and 11 Moore, 133 ; *Toomey* v. *London, Brighton & South Coast Railway Co.* 3 C. B. (N. S.) 146 ; *Cotton* v. *Wood,* 8 C. B. (N. S.) 568; *Cornman* v. *Eastern Counties Railway Co.* 4 H. & N. 781.

*G. A. Somerby,* for the plaintiffs.

COLT, J. The points made by the defendants upon these exceptions are all embraced in the requests for specific instructions. The instructions which were given in place of those requested are not stated, and must be taken to have been full and correct in other respects.

1. There was evidence tending to prove that the meeting which the plaintiff attended, and from which she was returning when injured, on the Lord's day, was a religious meeting of those who held a religious belief in common with her ; and that she attended it in good faith, for devotional exercise, as matter of conscience, and because the meeting which she regularly attended in Charlestown, where she lived, was temporarily suspended. The jury must have so found. The necessity of travelling, within the exception in the Lord's-day Act, is to a great extent determined by its moral fitness and propriety ; and it would have been erroneous to have ruled, as matter of law, that travelling for such a purpose was not within the exception. *Bennett* v. *Brooks,* 9 Allen, 118 *Commonwealth* v. *Sampson,* 97 Mass. 407. *Hamilton* v. *Boston,* 14 Allen, 475. It was for the jury to say, upon all the evidence, whether the meeting was of the character claimed by the plaintiff, and whether she attended it for the honest purpose of divine worship and religious instruction.

2. The defendants insist that, as they leased that portion of their line, where this accident happened, of the Malden and Melrose Railroad Company, without legislative sanction, the contract of transportation made with the plaintiff as to that part was in excess of their chartered powers and void, and therefore no action for a breach of the duties of passenger carrier at that point can be maintained. But the legality of their contract with the plaintiff does not depend upon the validity of this lease. There is no doubt, under our decisions, of the legal capacity of a railroad corporation to assume responsibilities, as incident to their business,

for the safe transportation of passengers and their baggage beyond the limits of their own line or of roads under their immediate control; at least, to the extent here indicated. *Najac* v. *Boston & Lowell Railroad Co.* 7 Allen, 329. The defendants were in actual possession and use of the track, without objection from the owners or the Commonwealth; they assumed this responsibility to the plaintiff for a valuable consideration; and it is wholly immaterial, so far as this action is concerned, that the lease was not legally made. In *McCluer* v. *Manchester & Lawrence Railroad Co.* 13 Gray, 124, it was held that the company cannot avoid their liability for goods injured on a connecting road leased to them, on the ground that the lease is void. See also *Burroughs* v. *Norwich & Worcester Railroad Co.* 100 Mass. 26; *Hill Manufacturing Co.* v. *Boston & Lowell Railroad Co.* 104 Mass. 122.

It is unnecessary to consider what relation may have existed between other passengers and the defendants. If the plaintiff was lawfully travelling, then the defendants had a right to carry her, and it is enough that between them alone the relation of carrier and passenger existed.

3. Upon the question of the defendants' negligence, the instructions were all properly refused. It is true that a carrier of passengers does not warrant the absolute safety of his passengers. His undertaking goes no further than this, that he will use reasonable care according to the nature of his contract; and as that involves the safety of the lives and limbs of passengers, the law requires the highest degree of care which is consistent with the nature of the undertaking. If an accident then happens, the carrier is not responsible. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227, 233. *Crofts* v. *Waterhouse*, 3 Bing. 319, 321.

The burden is on the plaintiff to prove the defendants' negligence. But there are cases where proof of the occurrence of the accident, and of the exercise of due care on the part of the plaintiff, is *primâ facie* proof of the defendants' negligence. A railroad and its cars are constructed and adjusted to each other with the purpose that, when there is no defect in either, the cars shall remain on the track. The fact that a car runs off is evidence of

defect or negligence somewhere ; and where the track and the cars are under the exclusive control of the defendants, it has been held evidence of negligence sufficient to charge them, in the ab- sence of any explanation showing that the accident happened without fault on their part. *Le Barron* v. *East Boston Ferry Co.* 11 Allen, 312. *Carpue* v. *London & Brighton Railway Co.* 5 Q. B. 747. It is not incumbent on the plaintiff, after proving an accident which implies negligence, to go further and show what the particular negligence was, when from the circumstances it is not in his power to do so. *Exceptions overruled.*