WASHBURN & MOEN MANUFACTURING COMPANY *vs.* PROVI-
DENCE AND WORCESTER RAILROAD COMPANY.

Goods were delivered to a railroad corporation to be carried to New York, and the freight
was paid to it for the entire distance; the goods were receipted for as "for transporta-
tion;" the shipper knew that the railroad terminated at an intermediate point, whence
the goods were to be carried the rest of the way by a steamer of another corporation, and
that the freight money was to be divided between the corporations. In an action against
the railroad corporation to recover for damage to the goods, happening upon the steamer,
*Held*, that the corporation was not a common carrier beyond the end of its road, and was
not liable.

CONTRACT, with a count in tort, against the defendants as
common carriers, to recover damages for the partial loss by fire
of 122 barrels and 2 boxes containing 29,890 pounds of wire.

At the trial in this court, before *Ames*, J., it appeared that the
plaintiffs, a manufacturing corporation in the city of Worcester,
sent the wire to the defendants' freight station in Worcester, May
23, 1868, and stated that it was to be transported to New York;
that the wire was delivered to the defendants' freight agent, who
gave the plaintiffs a receipt therefor, as follows:

"Worcester, May 23, 1868. Received of Washburn & Moen
Manufacturing Company, in good order, 122 bbls., 2 boxes,
29,890 lbs., for transportation, marked and numbered as per
margin. For Providence and Worcester Railroad Corporation,
J. E. Bacon."

[Marginal Marks.]

"Washburn & Moen Manufacturing Company, New York.
Freight Paid."

From April 1 to May 23, the plaintiffs had delivered to the
defendants' freight agent at Worcester very large amounts of wire
destined to New York, taking receipts like the one taken on this
occasion, with the mark on the margin as in this case, "freight
paid," without the freight having been then paid. Wire had
been so delivered to the defendants for transportation several
days in each week between April 1 and May 23. The freight
was paid in this manner; the defendants presented bills of freight
of each shipment of merchandise to the plaintiffs soon after the
shipments, and at the end of the week the plaintiffs paid all their

bills for the week, and took a receipt therefor; the bills were like the one taken in this case, which is hereafter set forth, and the receipt like the receipt which is hereafter set forth. This course was adopted to prevent the trouble to both plaintiffs and defendants of paying and receiving the amount of freight on each several shipment as it was made. A duplicate of a receipt like the one given above was forwarded with the merchandise. The defendants' railway extended from Worcester to Providence, R. I., its rails running upon the wharf of the Providence and New York Steamship Company, which company ran steamers from Providence to New York by the way of the Providence River, Narragansett Bay, Atlantic Ocean, and Long Island Sound. The defendants collected of the plaintiffs the whole freight money on all merchandise thus sent from Worcester to New York, at the rate of 20 cents per hundred pounds. The plaintiffs did not know how the freight money from Worcester to New York was divided between the companies, but they knew, when they delivered the goods in question and the goods previously delivered to the defendants, that the defendants' railroad extended only from Worcester to Providence, and that the goods in question and the other goods would at Providence be delivered by the defendants to the steamship company, and would be carried by that company by water from Providence to New York, and they supposed and believed that there would be some division between the two companies of the freight money. All the merchandise delivered by the plaintiffs to the defendants was delivered on board of the steamship company's steamers at Providence, and taken to New York, and upon its arrival the consignees were notified and took it from the steamship company's wharf. May 25, 1868, in pursuance of the usual course of business, the defendants' agent who signed the receipt for the merchandise sued for, presented a bill, in the following form, for the freight money to the plaintiffs : " Providence & Worcester Railroad and Neptune Steamship Companies' Line between Worcester and New York. Daily each way. May 25, 1868. W. & M. M. Co., Dr., for transportation of merchandise to New York, from Worcester *via* Providence, 122 bbls. wire, 2 boxes, 29,890 lbs., $59.78. Not

responsible for contents of cases boots and shoes, unless strapped with iron or wood. Leakage of liquors in all cases at owner's risk. No damage allowed unless notified before the goods leave the company's pier. Received payment." And June 1, 1868, the plaintiffs paid the defendants the freight for the preceding week, amounting to $992, which included the charges for the freight of the merchandise sued for, and took a receipt as follows: " Worcester, June 1, 1868. Received of Washburn & Moen Mf. Co., nine hundred and ninety-two dollars, in payment of freight bills to date. Julius E. Bacon, per Marshall, G. F. Agt." The goods sued for were transported to Providence by the defendants, and were then delivered by them on board one of the steamship company's boats, which arrived at New York, Sunday, May 24, 1868, where she was burned as she lay at the pier, and the wire in question was damaged.

Upon this evidence, and other evidence which proved to be immaterial, the case was reserved for the determination of the full court, with power to make such inferences from the facts stated as a jury would be justified in doing.

*J. G. Abbott*, for the plaintiffs.

*J. D. Ball*, for the defendants.

AMES, J. The case finds that the goods were delivered to the defendants' agent at Worcester, for transportation to New York, and that the defendants have received the freight money for the entire distance. All parties knew that the defendants' railroad terminated at the city of Providence, and that the conveyance from that point to New York was to be by a steamboat belonging to another company. The plaintiffs had no direct communication with the steamboat company, but they understood that the freight money was to be divided between the two companies, although they had no knowledge what the share of each was to be. The receipt that was given when the goods were left with the defendants' agent is a mere acknowledgment that they were received " for transportation," generally, without naming any place to which they were to be sent. It may be assumed that this receipt was not intended to contain the whole of the contract between the parties, and that the general course of this

department of the defendants' business, and the practices and arrangements which they had adopted in relation to it, were implied in and made a part of the contract under which the goods were received and forwarded. But after making all proper allowance for this consideration, we can see no ground in the facts reported for holding that the defendants assumed by express contract any responsibility for the goods after they were delivered to the steamboat company at Providence.

We are not able to see that this case differs, in any material particular, from the recent case of *Burroughs* v. *Norwich & Worcester Railroad Co.* 100 Mass. 26. Like this, that was a case of successive carriers, and the arrangements between them were of the same general character as between the two carriers in this case. One of them was to receive the goods and carry them part of the way, and the transportation was to be finished by the other. It does not distinctly appear that the freight money had been paid to the first of the two carriers, in *Burroughs* v. *Norwich & Worcester Railroad Co.*, but under the rule given in *Darling* v. *Boston & Worcester Railroad Co.* 11 Allen, 295, that would not affect the question. If the entire freight money were paid in advance, yet in the absence of any contract by the first carrier to be responsible for the entire distance, he would be considered as receiving it, in part for his own share of the service, and as agent for the next carrier in the series for the residue. It would be immaterial in what mode this division should be made, whether by settling each transaction by itself, or by keeping a running account of the business generally, for periodical adjustment.

Some reliance is placed by the plaintiffs upon *Hill Manuf. Co.* v. *Boston & Lowell Railroad Co.* 104 Mass. 122; but that was an exceptional case, depending on its own special circumstances, which, in the judgment of the court, distinguished it from *Burroughs* v. *Norwich & Worcester Railroad Co.* It was a case in which there were four successive carriers, and the question was whether the defendants had made a positive contract for the whole distance. This was of course a question of intention; and the relation in which any such corporation had placed itself, for

instance, by a lease, or by a contract giving some of the privileges of a lease, with any other connecting corporation, would be an important element to consider in the question of intention   The case was submitted to the court, with power to draw any inferences from the facts stated, that a jury would be warranted in drawing.   In that case, as in the one before us, there had been a written contract between the defendants and the next carrier in the line, in relation to the business, and the accounts, &c., and the freight for the whole distance had been paid to the defendants. All the circumstances which are relied upon in this case, to make out a positive contract for the entire transportation, were present in that, with the additional fact that the defendants in that case had made special provision in the written contract, that they should be indemnified against all losses and damages happening in any part of the joint line, beyond the limits of their own road. They needed no such indemnity, if they were carriers merely on their own line, and forwarding agents for the rest of the way. The inference which the court drew from the circumstances was that the defendants intended to simplify matters between themselves and their employers, and to assume the responsibility for the whole transit; and that it was for that reason that they had obtained this promise of indemnity, which upon any other construction would have been unmeaning and nugatory.   By this special written contract they not only secured the use of the next carrier's line of road, but an indemnity covering the entire distance from the end of their own line to New York, and so had put themselves in a condition to contract for the whole distance, with substantially no addition to their own local risks.   Upon the question of intention, which was left to be inferred from circumstantial evidence, this particular feature of the case was of decisive weight with the court.   It is wholly wanting in the case at bar. , In this view of the case, the other questions raised at the argument need not be considered, and we must order

*Judgment for the defendants.*