MARY S. STEVENS *vs.* E. & N. A. RAILWAY.

Penobscot, 1875.—May 9, 1876.

*Railroad.*

Although the burden of proof falls upon a plaintiff to establish the negligence of a railroad company sued for an injury caused by their cars running off the track; still, where the plaintiff is guilty of no negligence, and the cause of the accident is not disclosed by the attending circumstances, the burden of explanation falls upon the company to show that there was no fault upon their part; and a jury would be authorized to presume them guilty of negligence if they fail to do so.

ON MOTION.

CASE brought to recover damages for personal injuries received on the defendants' railway, August 28, 1873.

It appeared in evidence that the plaintiff was a passenger on the car of the defendant company, getting on at Bangor, that the car

being about three-fourths full proceeded about twenty-five rods from the depot at a rate of speed from five to ten miles an hour; and then went off the track, producing a slight shock. It did not appear that the car was damaged, or that any of the passengers, except this plaintiff, received any injury. The passengers left the car, the plaintiff, among others; and she walked to her house some four-fifths of a mile.

She testified that she was fifty-four years of age and in good health when she entered the car, that the train commenced slatting soon after the cars started, slat her from right to left, then stopped, jerked back, and then pitched forward, that her back was thrown against the back of her seat, that she was also pitched on to the back of the seat in front; that she at first fainted and then recovered somewhat and was assisted out of the car; that by resting frequently on the way and receiving some support, she succeeded in reaching her home, took her lounge, had severe pain in the back, hip and head, sent for the doctor, took and kept her bed entirely for five days; that she got up very poorly, found she had received severe internal injuries from which she had not recovered.

She introduced no evidence to show negligence on the part of the company.

On the part of the defense, evidence was introduced tending to show that the car was comparatively new, the wheels and axle had been little used, were purchased of a company having a high reputation, were constructed of the best known materials and combining all the appliances which men skilled in the art of car construction employ; that the car and wheels and axle were duly and carefully inspected the night before and the morning when the train started; that the cause of the running of the car from the track was the loosening of the wheel; that this could not have been detected by the most careful examination; that the loosening of the wheel may take place when the wheel and axle have been manufactured with the highest degree of skill and of the best materials, and cannot be detected by the most careful inspection; cannot be detected either by the ear or eye; that it may be a latent defect not discoverable by the most careful examination and not possibly to be prevented by the highest skill in manufacturing.

There was evidence that, before the suit was brought, the defendants paid the plaintiff $275, and employed and paid a physician to attend her $250.

The verdict was for the plaintiff, $1,625, which the defendants moved to have set aside as against law, evidence, its weight, and on the ground of excessive damages.

*C. P. Stetson,* for the defendants.

*A. Sanborn,* for the plaintiff.

PETERS, J.  The defendants move to have the verdict set aside. There is a single ground upon which the verdict may stand.   The accident occurred within a moment after the cars left the depot in Bangor, destined for St. John.   It happened by a wheel being loose upon the axle under one of the cars, the train being thrown from the track thereby.  The questions at the trial were : first, whether the defect existed at the moment of starting, or whether it might have been produced while the cars were running afterwards ; and if it existed before starting, whether it could have been discovered by the employees of the defendants by the use of proper and sufficient care.   The latter question was a close one.   The burden of explanation, however, that falls upon a company in a case like this, helps the plaintiff upon this point.   Undoubtedly the general burden of proof is upon the plaintiff to show that her injury was caused by the negligence of the defendants.   She avers it, and must prove it.   Nor, in a strict sense, does the burden of proof change.   *Small* v. *Clewley,* 62 Maine, 155.   But it may be aided and sustained by a presumption that arises upon the facts.

Where a passenger is in the use of proper care when an injury happens to him by the cars running off the track, the cause of the accident not appearing from the attending circumstances, it has been frequently decided, that negligence upon the part of the railroad company may be presumed against them, unless the imputation is removed by some satisfactory explanation upon their part. As the cars and the track are within the exclusive possession and control of the company, it is incumbent upon them to explain the cause of an accident, it not being ordinarily in the power of the passenger to do so.   Cars can ordinarily be run with safety, and

when they are not, that fact itself is evidence of fault or defect somewhere, requiring explanation. The maxim, *res ipsa loquitur*, applies in such a case. *Feital* v. *Middlesex Railroad Co.*, 109 Mass. 398; and cases there cited. *Stokes* v. *Saltonstall*, 13 Pet. 181. *Railroad Co.* v. *Pollard*, 22 Wall. 341.

The question then comes, whether the explanation set up in this case is made out. If the defect existed at the depot before the train was put in motion, of which we think there was quite satisfactory evidence, were the jury justified in believing that it could have been there remedied by such caution and watchfulness on the part of the agents of the defendants as under the circumstances were required by common care? We are not convinced that the jury committed an error in this respect, giving the defendants the benefit of the interpretation of the rule as to common care, invoked by them and supported by the authorities by them cited. The defendants' witnesses do not swear positively that it was not within the limits of practicability to have discovered the defect before leaving the depot, if it existed then. The judgments of the experts are based upon the statement that a proper and sufficient examination had been made by the employees, the correctness of which statement may well be doubted. If there are no means of discovering such a defect, it is, certainly, a deplorable risk for travelers. The truth is, that men who have routine work to perform often become careless. Undoubtedly, defects may exist in the running gear of railroads, not discoverable by any of the ordinary tests applied for their detection; but we are not satisfied that the jury erred in coming to the conclusion that such was not the case here.

Upon the question of the amount of damages, we are by no means free of doubt, whether the verdict should be sustained. There is much reason to believe that the injury may be grossly exaggerated, and there is some question whether the plaintiff had previous good health enough to warrant her traveling upon the road. But as the testimony is very conflicting, as bearing upon this branch of the issues tried, we are disposed to allow the verdict to stand.                                    *Motion overruled.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.