BERTRAM H. SAUNDERS, PLAINTIFF IN ERROR, v. THE
ADAMS EXPRESS COMPANY, DEFENDANT IN ERROR.

Argued June 21, 1909—Decided November 30, 1909.

1. A common carrier may contract to carry goods to a point beyond
   its own line.
2. Where a common carrier contracts generally to carry goods, but
   provides that if it has not an agency at the point of destination,
   it shall carry to its agency nearest or most convenient thereto, and
   there notify the consignee or deliver the property to some other
   carrier, it is not sufficient to bring the case within this provision
   of the contract to prove that the carrier had no office at the
   point of destination.

On error to the Supreme Court, whose opinion is reported
in 47 *Vroom* 228.

The case was tried before the court without a jury, and the
judge found the following facts:

The action is for an injury to a calculating machine, de-
livered by the plaintiff to an agent of the defendant at Wash-
ington, D. C., to be transported to Clifton, New Jersey. The
Adams Express Company, having no office at Clifton, trans-
ferred the machine to the Wells-Fargo Express Company at
Jersey City, and that company continued the transportation
and delivered the machine to the plaintiff's representative at
Clifton. When the box was opened the machine was found to
be injured. At the time plaintiff delivered the machine in
Washington to the defendant's driver he received from the
latter a receipt, which contained the following conditions:

"1. In consideration of the rate charged for carrying said property, which is regulated by the value thereof, and is based upon a valuation of not exceeding fifty dollars, unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein.

"2. If the Express Company has not an agency at the point of destination, it shall carry the property to its agency nearest or most convenient thereto, and there notify the consignee, or deliver the property to some other carrier to continue the transportation. The Adams Express Company shall not be liable for loss or damage occurring after such delivery, nor for detention after having tendered the property to a connecting carrier."

The driver, at the time of shipment, asked the plaintiff the value of the article, and either a value of $50 or no value was declared. The plaintiff did not read the receipt given to him, although it was legible and intelligible. The injury to the machine more probably occurred while being delivered at the plaintiff's house by the agent of the Wells-Fargo Company than while in the charge of the Adams Company. The judge on these facts found generally for the defendant.

For the plaintiff in error, *Preston Stevenson.*

For the defendant in error, *Robert H. McCarter* and *Conover English.*

The opinion of the court was delivered by

SWAYZE, J. The question presented in this case is much narrower than the important legal questions which were so fully and ably argued by counsel. We assume for the purpose of this decision that the whole contract was set forth in the receipt, and that the plaintiff assented to its terms, and we lay no stress upon what seems to have been the finding of the

court that the contract in fact was for through transportation from Washington to Clifton. If we look at the receipt alone it is clear that the express company agreed to carry the box to its destination unless it had no agency at that point. That is a necessary inference from the provision authorizing it to carry the box to some other point than the point of destination when it had no agency there; it is a case where the exception proves the rule. The court did not find whether in fact the lines of the Adams Express Company reached Clifton. This, however, is unimportant. It is well settled that a carrier may contract to transport goods beyond its own lines. *Ogdensburg and Lake Champlain Railroad Co.* v. *Pratt, 22 Wall.* 123; *Ohio and Miss. Railroad Co.* v. *McCarthy, 96 U. S.* 258; *Northern Pacific Railroad Co.* v. *American Trading Co.,* 195 *Id.* 439; *Hill Manufacturing Co.* v. *Boston and Lowell Railroad Corporation,* 104 *Mass.* 122; *Darling* v. *Boston and Worcester Railroad Corporation,* 11 *Allen* 295; *Root* v. *The Great Western Railroad Company,* 45 *N. Y.* 524. Numerous other cases are collected in 6 *Cyc.* 481, and 6 *Am. & Eng. Encycl. L.* 631. These were all railroad cases where it was at one time open to debate whether such a contract was not *ultra vires.* The case is stronger in favor of the right of an express company to contract for delivery beyond its own lines, since, unlike railroad companies, an express company is not confined to terminals, but offers as one of its advantages, perhaps its chief advantage, over other carriers, the ability to make delivery at the residence or business place of the consignee.

Since it was permissible for the defendant to contract for through transportation, the question to be determined is whether the contract in this case had that effect. It certainly had unless the defendant had no agency at the point of destination. In this respect the findings of fact are silent. The finding that it had no office at Clifton is very far from a finding that it had no agency at the point of destination, and this for two reasons: *First,* an office and an agency are not necessarily the same thing; *second,* Clifton was not the point of destination.

*First.* The words "office" and "agency" may, by a derivative meaning of the latter word, sometimes be almost equivalent in signification, but they are primarily different. It must often happen, and may be the fact in this very case, that express companies have no office in villages which can readily be. reached from a central office in another town, but no one would suggest that in such a case this clause in the contract exempts the company from making deliveries by the ordinary and accustomed agency of a delivery wagon.

*Second.* Moreover, to come within the provisions of the contract, there must be no agency *at the point of destination.* The point of destination of goods shipped by express is ordinarily, as in this case, not a mere common terminal point, like a depot in the case of a railroad, or a wharf in the case of a steamboat; it is often, perhaps usually, the place of business or residence of the consignee. Such was the understanding in the present case; delivery at the plaintiff's residence was actually made as if in fulfillment of the contract. Either we must give the words "point of destination" a meaning different from that upon which the parties have acted, or we must give the word "agency" a meaning different from "office," for it would be absurd to construe this contract as if it contemplated the possibility of the defendant having an office at the residence or business place of each of its consignees. No such difficulty occurs if we read the word "agency" as used in its primary sense of the instrumentality by which the work is done, or in the sense of the person or agent by whom it is done. If we adopt this sense, we are not obliged to construe the contract as meaning that the carrier will be exempt from carrying the parcel through to its ultimate destination in case it has no agency permanently located at that particular point. The meaning is that it is exempt if it has no agency by which it can ordinarily, in the usual course of its business, reach the ultimate destination. Necessarily, in all cases where a carrier undertakes to carry goods beyond its own lines, it must employ an agency or agencies for that purpose, and the authorities above cited sustain the proposi-

tion that for that purpose one carrier may be the agent of another. The findings leave us in ignorance as to the exact relations which subsisted between the Adams Express Company and the Wells-Fargo Company. They may have been partners, each being the general agent of the other; they may have been in the position of principal and agent, or employer and employe, or they may have been only in the position of connecting carriers. The silence of the findings upon this subject is no doubt due to the lack of evidence, which makes it impossible to determine the precise fact. If the relations between the companies had appeared at the trial and had been undisputed, it would have been then for the court to determine whether or not the defendant had an agency at the point of destination within the meaning of the contract. If it had not, the further question would arise whether the delivery to the Wells-Fargo Company at Jersey City was a delivery at the agency nearest or most convenient to the point of destination in accordance with the language of the contract. The finding for the defendant was not justified by the evidence, and the judgment must be reversed, and there must be a *venire de novo.*

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON, JJ. 14.