BENJAMIN BLOCK vs. FITCHBURG RAILROAD COMPANY
& others.

Suffolk.    March 10. — May 11, 1885.    W. ALLEN, COLBURN, & HOLMES,
JJ., absent.

Several railroad corporations having connecting lines between B. and C. formed
an association, under a specified name, for the transportation of goods between
those places.   An agent was appointed in B., with authority to receive goods
there and to give a bill of lading for their transportation.   This bill of lading
did not mention the names of the several corporations, but only the name of
the association.   *Held*, that the corporations were liable jointly and severally
for the loss of goods received by their agent for transportation.

Several railroad corporations having connecting roads between B. and C. formed
an association called the Despatch Company, for carrying goods between those
places.   Their agent issued a bill of lading, acknowledging the receipt of goods
to be carried by the F. Railroad, and thence by the Despatch Company to C.,
and there to be delivered to the agents of connecting steamboat or railroad
company, and by them to be delivered to the next connecting steamboat or rail-
road company, until said goods shall reach the point of destination.   The bill
of lading further provided, that the Despatch Company should not be liable for
certain risks; and that, in case of loss whereby any legal liability might be in-
curred, "that company shall alone be held answerable therefor in whose actual
custody the same may be at the time of the happening thereof;" and that, in
case of loss "for which either of said companies may be liable, it is agreed that
said company shall have the benefit of any insurance effected by or for account
of the owner of said goods."   *Held*, that for a loss occurring between B. and
C. the owner of the goods could maintain an action against all the corporations
forming the association.

CONTRACT, against the Fitchburg Railroad Company and seven
other railroad corporations, described in the writ as " doing busi-
ness together as a line for the purpose of carrying freight, under
the name of ' Erie and North Shore Despatch,' " and having a
usual place of business in Boston.    The declaration alleged a
delivery of a package of goods to the defendants at Boston, to
be delivered to the plaintiff at Denver, Colorado, under a bill of
lading, and the non-delivery thereof.    The bill of lading, which
was headed " Erie and North Shore Despatch Fast Freight
Line," and acknowledged the receipt of the package, contained
the following clauses:

" It is understood and hereby agreed that the Erie and North
Shore Despatch will not be liable for loss or damage or delays
to the above goods on any river or lake, and the goods may be
stored at the risk and expense of the owners when reasonably

necessary, and said company and any company carrying said property will not be liable for any loss, damage, or delay caused by guerillas, military seizure or occupation of engines, cars, or road.

" The property is supposed to be marked as per margin, and is to be transported by the Fitchburg Railroad, and thence by the Erie and North Shore Despatch to Chicago, and there delivered to the agents of connecting steamboat or railroad company, and by them to be delivered to the next connecting steamboat or railroad company, and in like manner to be delivered to each connecting company, until said goods shall have reached the point named in this bill of lading.

" And in consideration that this company has reduced the price of such transportation below the local rates, the shipper and owner does hereby release the Erie and North Shore Despatch, and the steamboat and railroad company which may receive said property, from liability from leakage of all kinds of liquids, breakage of all kinds of marble, glass, carboys of acid (or articles packed in glass), stoves and stove furniture, castings, machinery, furniture, carriages, musical instruments of all kinds, packages of eggs, and other frail and brittle articles ; also, from loss or damage on hay, hemp, cotton, or any article that may be carried in open cars ; and from damage to perishable property of all kinds ; and also from damage or loss to any article from or by fire or explosion of any kind.

" It is further stipulated and agreed, that in case of any loss, detriment or damage done to or sustained by any of the property herein receipted for, during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company shall alone be held answerable therefor in whose actual custody the same may be at the time of the happening thereof. And it is understood that no liability will exist for wrong carriage or delivery of goods marked by initials, or inadequately marked. All goods or property shipped on this receipt will be subject to necessary cooperage, and will be delivered at the depots of the company or steamboat landing, it being also agreed between the parties hereto that the said Erie and North Shore Despatch, and the steamboat and railroad companies with which they connect, shall not be held accountable for any deficiency if receipted at Chicago in good order.

"And in case of loss or damage of any of the goods named in this bill of lading, for which either of said companies may be liable, it is agreed that said company shall have the benefit of any insurance effected by or for account of the owner of said goods, said insurance and claims thereunder to be fully disclosed and assigned to said company before any damage can be claimed."

Trial in the Superior Court, before *Staples*, J., who ordered a verdict for the defendants. The plaintiff alleged exceptions, which appear in the opinion.

*L. M. Child*, for the plaintiff.

*C. A. Welch*, for the defendants.

MORTON, C. J. The evidence at the trial tended to show that the several defendant corporations formed an association or company under the name of the "Erie and North Shore Despatch Fast Freight Line," for the transportation of merchandise between Boston and Chicago; that the association had an agent in Boston, who was authorized to receive goods at Boston for transportation over the line to Chicago, and to give bills of lading or contracts for transportation like the one upon which the plaintiff sues; that the plaintiff delivered goods to such agent, and received the bill of lading in suit, and that a part of the goods were lost between Boston and Chicago.

By the bill of lading, the "Erie and North Shore Despatch" contracts to carry the goods from Boston by the Fitchburg Railroad, and thence by the Erie and North Shore Despatch, to Chicago, and there to deliver them to connecting railroad lines, to be forwarded to Denver, their destination. The several railroad companies which form the association are not named in the contract. It is a single and indivisible contract, by which the Erie and North Shore Despatch Line agrees to carry the goods to Chicago, the freight to be earned upon the delivery there to the connecting line. So far as the question in this case is concerned, it is unlike those cases where a railroad forming one link in a line of connecting roads between two points receives goods to be transported over its line and delivered to the connecting road, in which it has been held in this Commonwealth that each railroad in the continuous line is liable only for loss or damage happening on its own road. *Darling* v. *Boston & Worcester Railroad*,

11 Allen, 295.  *Gass* v. *New York, Providence, & Boston Rail-road,* 99 Mass. 220.  *Burroughs* v. *Norwich & Worcester Rail-road,* 100 Mass. 26.  *Aigen* v. *Boston & Maine Railroad,* 132 Mass. 423.

The defendants formed a company, and in its name made a special contract to carry the plaintiff's goods from Boston to Chicago.  They are, so far as the plaintiff is concerned, part-ners, and liable jointly and severally for any loss or damage to his goods between Boston and Chicago, unless they are exempted from liability by the terms of the contract.  *Hill Manuf. Co.* v. *Boston & Lowell Railroad,* 104 Mass. 122.  The principal diffi-culty in this case is as to the true construction of the contract of carriage.  It contains the provision, that, in case of loss or dam-age to the property received, " whereby any legal liability or responsibility shall or may be incurred, that company shall alone be held answerable therefor in whose actual custody the same may be at the time of the happening thereof."  It also contains a provision, that, in case of loss or damage of any of the goods " for which either of said companies may be liable, it is agreed that said company shall have the benefit of any insurance effected " thereon by the owner.

The defendant contends that the expression " that company," in the clause above cited, means that railroad company in any part of the continuous line between Boston and Denver; so that, although the plaintiff's loss occurred between Boston and Chicago, that railroad company in whose custody the goods were when lost is alone liable.  This is not the necessary, and we do not think it is the fair, construction of the defendants' contract.  By it, the Erie and North Shore Despatch, as a com-pany, undertakes to carry the goods to Chicago, and there to deliver them to a connecting line.  The several railroads which constitute this company are not named or referred to in the contract.  It is in the same terms as if the Erie and North Shore Despatch had been a single railroad corporation, with a road from Boston to Chicago.

In other parts of the contract, the expressions " this com-pany " and " said company " are used in connections which clearly show that they refer to the Despatch Company, and not to any railroad company between Boston and Chicago.  Thus

there is the provision, that it is "agreed that the Erie and North Shore Despatch will not be liable for loss or damage or delays to the above goods on any river or lake," and "said company and any company carrying said property will not be liable for any loss" by guerillas or military seizure. So there is the provision, that, "in consideration that this company has reduced the price of such transportation below the local rates, the shipper and owner does hereby release the Erie and North Shore Despatch, and the steamboat and railroad company which may receive said property, from liability for leakage," &c. In these clauses the word "company" clearly refers only to the Despatch Company and the connecting company or companies between Chicago and Denver.

The words "said company," or "said companies," used in the clause as to insurance and in other places, by their natural interpretation, refer to companies which have previously been named. We cannot see why the words "that company" in the clause we are considering should receive a different construction from that given to equivalent or similar words in other parts of the contract. The plaintiff was dealing with the Despatch Company alone for the transportation as far as Chicago. He did not know the parties who composed that company, and entered into no separate contract with either of them. He had the right to interpret the words "that company" as meaning the Despatch Company, and not a railroad company nowhere named in his contract. The effect of this interpretation is, what seems to have been in the minds of the parties, to release the Despatch Company from liability after it had carried the goods to the end of its route, according to its contract, and had delivered them to the connecting carrier, and to hold it liable to the point to which it had assumed and contracted to transport the goods as a common carrier.

We are of opinion that this is the fair construction of the contract, and therefore that the learned justice who presided at the trial in the Superior Court erred in directing a verdict for the defendants.                         *Exceptions sustained.*