# Dulaney & Wharton *v.* Philadelphia & Reading Railway Company, Appellant.

*Carriers—Common carriers—Railroad—Agency for soliciting freight— Negligence of agent—Bill of lading.*

1. Where a number of connecting railroads enter into an arrangement by which they employ agents at different points to solicit freight, and one of such agents issues a bill of lading without the initial carrier ever having received the goods, and knowing that it was to accompany a draft on the consignees, and the latter pay the draft, but never receive the goods, the consignees may recover the amount which they paid on the draft from the terminal carrier, inasmuch as apart from the question of partnership, there was a joint liability on the part of all the railroad companies on whose behalf the bill of lading was issued.

2. In such a case it is immaterial whether the bill of lading was negotiable or not.

Argued March 24, 1910.    Appeal, No. 62, Jan. T., 1910, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1904, No. 3,655, on verdict for plaintiff in case of Dulaney & Wharton v. Philadelphia & Reading Railway Company.    Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.    Affirmed.

Assumpsit for a loss resulting from the payment of a draft accompanying a bill of lading issued without delivery of goods to the initial carrier.    Before MAGILL, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,860.    Defendant appealed.

*Errors assigned* were various instructions.

*Albert B. Weimer,* with him *Theodore W. Reath,* for appellant.—The contract evidenced by the bill of lading was an Illinois contract and under the law of Illinois the defense that the goods were not received by the carrier is a good defense: Lake Shore & Michigan Southern Ry. Co. v. National Live Stock Bank of Chicago, 178 Ill. 506 (53 N. E. Repr. 326).

The plaintiffs caused their own loss by voluntarily and improperly paying a draft upon a straight bill of lading, which was not negotiable or quasi negotiable.

A connecting carrier cannot be charged by proof that the goods never reached destination nor can connecting carriers be sued jointly upon a several bill of lading.

No partnership was shown and the jury should have been so instructed: St. Louis Ins. Co. v. R. R. Co., 104 U. S. 146.

*William A. Carr,* with him *W. Horace Hepburn* and *Sidney L. Krauss,* for appellees.—Whether viewed as a

partnership between the defendants, or as the employment of a joint agent in the carrying on and conducting of a business under the name of the Hoosac Tunnel Fast Freight Line, the defendants, and each and every of them are jointly liable to the plaintiffs for the loss which they sustained by reason of the acts of the defendant: Block v. Fitchburg Railroad Co., 139 Mass. 308 (1 N. E. Repr. 348); White Livestock Com. Co. v. R. R. Co., 87 Mo. App. 330; Cinn., Hamilton & Dayton R. R. Co. et al. v. Spratt, 2 Duvall, 4; Kansas City S. Ry. Co. v. Embrey, 90 S. W. Repr. 15; Bostwick v. Champion et al., 11 Wend. 571; Hutchinson on Carriers, p. 283, secs. 263–264.

The receipt in a bill of lading is an assertion on the part of the defendant that it has the goods, and is therefore the equivalent of a direct representation to the plaintiff that the goods had been delivered to the carrier on his account: Brooke v. New York, Lake Erie & Western R. R. Co., 108 Pa. 529.

An examination of the Illinois cases, shows that the law of Illinois is in favor of the contention of the plaintiffs in this case: Northern Transportation Co. v. McClary, 66 Ill. 233; St. Louis & Iron Mountain R. R. Co. v. Larned, 103 Ill. 293; Tibbits & Son v. Rock Island & Peoria Ry. Co., 49 Ill. App. 567.

OPINION BY MR. JUSTICE MOSCHZISKER, May 2, 1910:

The defendant company was a member of the Hoosac Tunnel Fast Freight Line, which was an association of a number of railroads for the purpose of securing and expeditiously handling freight within a certain territory. The line did not own or operate cars of its own, the freight being handled by and in the equipment of the roads over which it passed. The so-called association was little more than a name used to designate a mutual agreement or arrangement by which a number of connecting railroads formed a continuous freight line and employed common agents or managers at different points. All of

the companies in the association contributed to the payment of the salaries of these common representatives according to an equitable system of apportionment estimated on the monthly receipts from the freight carried over the respective roads under bills of lading issued by such agents. The plaintiffs in the course of their business had been for some years in the habit of purchasing produce from one Frank E. Roberts, a commission broker in Chicago, Illinois; the goods purchased being shipped by him to them, and payments made through drafts issued by the former upon the latter, attached to bills of lading, and paid through banks in Philadelphia. On October 3, 1904, the plaintiffs received notice that a draft of this character had been presented at their bank. They accepted and paid the draft for $2,200, and received a bill of lading issued by the Hoosac Tunnel Fast Freight Line acknowledging the receipt from Roberts of 400 cases of eggs, to be carried from Chicago to Philadelphia and delivered to the plaintiffs as consignees. The goods were not delivered, and the plaintiffs brought action against the freight line, assuming it to be a corporation. It being duly shown that the defendant named was not a corporation, the record was amended and all of the railroads composing the association were brought in as defendants; but service was only obtained upon the Philadelphia & Reading Railway Company, and the suit proceeded to trial against that defendant alone.

At the trial of the cause there was practically no contest as to the facts; those which we have enumerated were proved; and it was further shown that the bill of lading was in the usual form issued by the Hoosac Tunnel Fast Freight Line, and there was nothing on its face to indicate that the freight line was not a subsisting legal entity, or to show the railroads associated under that name. When the bill went out, the agent of the freight line had knowledge that it was to be used to accompany a draft upon the plaintiffs, and it issued before he secured possession of the eggs. Roberts gave the agent a written

order for the car containing the eggs, which had not then arrived in Chicago, and relying upon that order the agent delivered the bill to Roberts. Later on he called upon the agent and told him that he had received information from the plaintiffs that had changed his mind about the shipping of the car to them; that he had already put the bill of lading with a draft attached in bank, but that he would secure its return. He thereupon gave the agent an order consigning to another party the car which was to have gone to the plaintiffs. In order to protect the interests he represented, the agent secured from Roberts what he calls a bond of indemnity, and then attempted to divert the car from the plaintiffs to someone else; but the eggs were stopped in transit before this was accomplished, and they never came into the possession of the agent, the freight line, or any of its railroads. The agent took no precaution to notify the plaintiffs of the circumstances or that the draft should not be honored.

The plaintiffs claimed as damages the amount of the draft with interest from the date of its payment, and the jury rendered a verdict accordingly. The defendant has appealed, and contends: That the Philadelphia & Reading Railway Company was not bound by the acts of the agent who issued the bill of lading; that it was not liable under the bill because the plaintiffs failed to prove that it had received the goods; that it was not liable because the physical goods were never delivered to or came into the possession of any initial carrier of the freight line; that connecting carriers cannot be charged by proof that the goods did not reach their destination; that the plaintiffs caused their own loss by voluntarily and improperly paying a draft upon a straight bill of lading; and that the jury should have been instructed that no partnership had been made out between the members of the association.

After outlining the evidence showing the facts substantially as we have stated them, the trial judge said to the jury: "The facts as presented, not being denied, entitle

the plaintiffs to a verdict for $2,200 with interest from the date of the payment of the draft. That is to say, if you shall find the facts to be as they have been stated to you by the plaintiffs' testimony, that the . . . . agent placed this bill of lading in the hands of Roberts, allowing him to use it as evidence of the fact that he had shipped over the railroad lines, through this agency, a car load of eggs; and Roberts then used the bill of lading for the purpose of collecting the amount represented by the draft, $2,200—in that case, the agency of the various companies having been established, if their agents through carelessness or otherwise permitted Roberts to have the bill of lading without getting the eggs, it was no fault of the plaintiffs, and they should not be required to suffer or made to suffer by reason of that fact." Under the evidence, these were correct instructions on the law governing the case. The loss of the goods in transit was not averred or sought to be proved; and the amount claimed and the verdict rendered were for the sum which the plaintiffs paid on the draft, not the market value of the eggs. The negligence was in issuing the bill of lading and giving it to Roberts before the eggs were in the possession of the initial carrier of the freight line, when the agent knew that the bill was to accompany a draft on the plaintiffs which presumably would be paid by them in due course, and in the subsequent conduct of the agent whereby the defendant was so placed as to be unable to carry out its obligations under the bill. Whether the association of the various railroads named as defendants be viewed in the nature of a partnership so far as third parties are concerned, as expressed in Block v. Fitchburg R. R. Co., 139 Mass. 308, or merely as an arrangement for the employment of common agents to conduct the business of each road carried on in the name of the freight line, at least all of the defendants that would have handled the freight under the bill of lading in question would be liable for the defaults of the agent who issued the bill: Kansas City Southern Railway Co. v. Embrey, 90 S. W.

Repr. 15, citing Hutchinson on Carriers; and it was shown that the Philadelphia & Reading Railway Co. was in this class. The agent had authority from all of the roads to issue such bills, and there is evidence to show that he was within the scope of his apparent authority in letting the bill go out as he did; the very nature of the business described in the testimony, the expeditious handling of freight, must at times involve the giving of bills of lading upon the receipt of orders for merchandise en route, without any physical possession of the goods at the time the bill is issued; there was testimony to the effect that such was the custom, and there was no evidence that the agent acted contrary to instructions in so doing. In Brooke v. New York, Lake Erie & Western Railroad Company, 108 Pa. 529, a shipping clerk at one of the stations of the defendant railroad issued a bill of lading in its name for goods that the company had never received, and the bill came into the hands of an innocent third person for value; on the suit of such person, it was held that the defendant was estopped by the act of its agent from denying the receipt of the goods, although the clerk had no authority to give bills without receiving the goods and the company had never done anything to lead anyone to suppose that he had such authority. The governing principles of that case are applicable in the present one, and we are not convinced that the law of the state of Illinois differs from the rules therein enunciated and applied. The case relied upon by the defendant, Lake Shore & Michigan Southern Railway Co. v. National Live Stock Bank, 178 Ill. 506, was on a set of facts quite different from those of the present case. There, when the parties who were endeavoring to recover obtained the receipt from the defendant company, they knew as a matter of fact that the company had not received the articles mentioned therein; and the court properly held that the receipt could be contradicted and the true state of facts shown, and that thereunder no recovery could be had. The interests of innocent

third parties were not involved, which is the distinction between that case and this one. A careful reading of the case will show no ruling that a recovery is barred where the goods covered by a bill of lading are not received by the carrier; it goes no further than to rule that a recovery "may be defeated" under such circumstances.

The conflict of decisions regarding the liability of a carrier for the fraudulent act of an agent in issuing a bill of lading for goods which he had not received and had no intention of receiving, need not be discussed, as these decisions have no application to the facts in this case. Not only did the present agent expect to get or control the possession of the eggs when he issued the bill, but, as previously noted, there was some evidence to show that it was customary for him to issue bills before actually securing possession of the goods, and it is perfectly apparent from the testimony that he acted in good faith toward his principals; in fact, it appears that he took some sort of indemnity for their protection.

The contention that the plaintiffs caused their own loss by voluntarily and improperly paying a draft accompanying a straight bill of lading cannot be sustained. The negotiability or non-negotiability of the bill is not in question. Even though one would have been protected by the delivery of the goods without getting possession of the bill, the carrier had the right to demand it before making the delivery, and the plaintiffs were justified in presuming that such a demand would be made; they only did the natural and proper thing in accordance with the usual course when they paid the draft and took up the bill.

On the last contention of the defense it is sufficient to say that the plaintiffs did not rest their case upon the theory of partnership. The defendant company was in an association of some sort or character, and it was not necessary to inquire into the exact legal relation of the different members inter se. Without regard to the question of partnership, so far as the plaintiffs were concerned,

there was a joint liability on the part of all of the roads on whose behalf the bill of lading was issued; the acts of the agent bound all of the principals thus involved, and a recovery could be had against the one upon which service was secured.

We see no merit in any of the assignments of error; they are all overruled, and the judgment is affirmed.